UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DMITRIY CHEBANENKO, | ) | |
| INNA CHEBANENKO, and | ) | |
| GIG LOGISTICS INC. | ) | |
| *Plaintiffs,* | ) | |
| vs. | ) | No. |
| | ) | |
| SVYATOSLAV LIKANOV | ) | |
| | ) | |
| *Defendants.* | ) | |

## COMPLAINT AT LAW

**NOW COMES** Plaintiffs, DMITRIY CHEBANENKO, INNA CHEBANENKO, and GIG

LOGISTICS INC. (hereinafter collectively referred to as "Plaintiffs"), by its attorneys, **Law**

**Offices of Fedor Kozlov, P.C.**, and complaining of the Defendant, SVYATOSLAV LIKANOV,

(hereinafter referred to as "Defendant") states as follows:

## PARTIES

1. At all times relevant hereto, DMITRIY CHEBANENKO (hereinafter referred to as "DMITRIY"), resides at County of Cook, State of Illinois.

2. At all times relevant hereto, INNA CHEBANENKO (hereinafter referred to as "INNA"), resides at County of Cook, Illinois.

3. At all times relevant hereto, GIG LOGISTICS, INC. (hereinafter referred to as "GIG"), is an Illinois Corporation with its principal place of business at County of Cook, State of Illinois.

4. Upon information and belief, Defendant, SVYATOSLAV LIKANOV (hereinafter referred to as "SVYATOSLAV"), resides at County of Philadelphia, State of Pennsylvania.

## JURISDICTION AND VENUE

1

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), as complete diversity exists between the parties and the amount in controversy exceeds $75,000.00, exclusive of interests and costs.

6. This Court is the proper venue for this adversary proceeding under 28 U.S.C. § 1391 (b), because: (2) because a substantial part of the events or omissions giving rise to the claims occurred within the Northern District of Illinois.

## FACTS COMMON TO ALL COUNTS

7. At all times relevant hereto, GIG was engaged in the trucking business that dispatches motor vehicles.

8. GIG has a well-established name in the trucking industry who is involved in the business for last five (5) years.

9. At all times relevant hereto, DENYS MUZYKA was an owner and president of GIG.

10. At all times relevant hereto, DMITRIY was a manager and registered agent of GIG.

11. At all times relevant hereto, INNA was a bookkeeper of GIG.

12. On or about March 30, 2020, SVYATOSLAV entered in business relationship with GIG.

13.  At all times relevant hereto, GIG had entrusted SVYATOSLAV with the transport of a 2008 GMC Acadia SLT 1 (hereinafter referred as "GMC").

14. GIG did not transfer title or ownership of the GMC vehicle or additional equipment in any way to SVYATOSLAV.

15. At some point in time, SVYATOSLAV unreasonably, and without  any legally justifiable grounds, became unsatisfied with his relationship with GIG.

16. On or about June 19, 2020, SVYATOSLAV wrongfully, and without authorization, assumed unilateral dominion and control over the GMC vehicle.

2

17. On or about June 19, 2020, SVYATOSLAV intentionally, and without permission, painted untrue and profane statements about GIG onto the GMC Vehicle. True and accurate copies of the pictures are attached hereto as **Exhibit A.**

18. The vandalism to the GMC Vehicle by SVYATOSLAV falsely alleged GIG to be in active commission of crimes by stating the following: "Warning!!! I need help stopping this company's crimes." See **Exhibit A**.

19. On or about June 21, 2020, SVYATOSLAV created a Facebook page about DMITRIY and INNA, named: "ПОИСК ЛЮДЕЙ ПОСТРАДАВШИХ ОТ ИННЫ И ДМИТРИЯ ЧЕБАНЕНКО" (translated from Russian into English: "SEARCH OF PEOPLE SUFFERED FROM INNA AND DMITRY CHEBANENKO") (hereinafter referred as "Facebook Group 1"). A true and accurate copy of the Facebook Group 1 is attached hereto as **Exhibit B**.

20. Following the creation of Facebook Group 1, SVYATOSLAV began to openly publish false statements on the Facebook Group 1 about INNA and DMITRIY with full knowledge of their falsity, and with reckless disregard for the truth and veracity of such.

21. On June 26, 2020, SVYATOSLAV posted on Facebook Group 1 the following accusations about INNA and DMITRIY:

> "One of DMITRIY and INNA's driver got into an auto accident due to DMITRIY and INNA who forced the driver to work overtime, adjust logbooks, and roll pick-up trucks' odometers back." See **Exhibit B**.

22. SVYATOSLAV did not provide any evidence in support of his allegations, nor identify the subject driver with any degree of specificity.

23. At all times relevant hereto, DMITRY and INNA did not ownGIG.

24. On or about June 27, 2020, SVYATOSLAV published in the Facebook Group 1 knowlingly untruthful statements about DMITRY and INNA where he asserted:

3

"Have a good one! This post is about deceased Mihai Portean, who used to work in DMITRIY's and INNA's company where he was forced to work overtime and adjust the logbook three (3) times a day. At the day of accident, he started his work shift at 6:30 a.m. and in 21 hours, at 3:30 a.m. of the next day in morning, he stopped his pick-up truck and stepped out of the vehicle where he was run over by the approaching truck." See **Exhibit B**.

25. That, and similar type false allegations, were shared and reposted on multiple Facebook pages and/or groups as a result of SVYATOSLAV's post.

26. On or about June 27, 2020, SVYATOSLAV appeared on the Youtube channel: "SAW ПИЛА" (https://www.youtube.com/c/SAWGARAGE/) where he stated, without any legal justification, knowingly false statements concerning DMITRIY, INNA, and GIG.

27. On or about July 7, 2020, Law Offices of Fedor Kozlov sent a letter to SVYATOSLAV with a request to cease and desist all defamatory actions, including but not limited to statements, videos, blogs and any other such communications with GIG's employees and agents. A true and accurate copy of the cease and desist letter attached hereto as **Exhibit C**.

28. On July 30, 2020, SVYATOSLAV published on his own Facebook page and shared his post at the Facebook group (Link: https://www.facebook.com/groups/1090070808056965/?ref=share) the following statement about GIG:

"the Greetings to all! It's time to stop the lawlessness that is happening in the United States in transport companies organized by our compatriots from the CIS countries! A business that violates all kinds of laws of the United States and people do not consider people. With a common effort, we will be able to promptly help countrymen who have faced deception one on one. We must develop effective ways to combat the unfair owners of such transport companies in order to stop the work of such "businesses" and not let people deceive and torment. To achieve justice by a collective method - one for all and all for one! Stop being each other 🐱, let's change the world for the better together!"

A true and accurate copy of screenshot of Facebook page is attached hereto as **Exhibit D**.

29. On or about August 3, 2020, SVYATOSLAV posted on Facebook page of Law Offices of

Fedor Kozlov false statements about GIG:

> "GIG organized a criminal business in the United State bringing illegal immigrants from Post-Soviet Union Countries for employment, in violation of all laws and regulations, with regular driver's licenses and without sufficient training, they allowed drivers to drive pick-up trucks with trailer and three (3) vehicles on the trailer. 99% of the job performed by the company is criminal acts:
> 1) Drivers do not have a commercial driver's license (CDL), but drive overweighted pick-up trucks;
> 2) Drivers' logbooks were adjusted and/or falsified for purpose to extend the work time to 16 – 20 hours per day. Drivers caused multiple accidents due to lack of sleep, even fatal accidents;
> 3) Pick-up trucks are leased from FORD, GIG's employee OLEG reduces mileage of leased vehicle by rolling the odometer back, so they can change some vehicle parts for free;
> 4) Pick-up trucks and trailers often have problems with a brake system and tires that are bald;
> 5) Skipping of Weight Stations;
> 6) Mailing cash in the mail, each driver must send cash via mail;
> 7) Made a scheme for hiring illegal workers from abroad;
> 8) Counterfeiting of documents;
> 9) Tax Fraud, they open fake companies for a short period of time and make them bankrupt after a few months.
> 10) They do not pay wage to employees."

A true and accurate copy of screenshot of Facebook page is attached hereto as **Exhibit E.**

30. The mentioned-above false statements were repeated on Youtube channel: "SAW ПИЛА" on

multiple occasions:

- https://www.youtube.com/watch?v=vhOfUO9e6UI

- https://www.youtube.com/watch?v=vLDvmmA9wFc&t=1369s

- https://www.youtube.com/watch?v=krKVccbqDcc

31. SVYATOSLAV knew at the time he made the publications that they were damaging to

Defendants reputation.

32. SVYATOSLAV's posts at Facebook and Youtube were made with actual malice because

SVYATOSLAV did not undertake any investigation into the accuracy of his accusations

5

prior to posting those accusations demonstrating SVYATOSLAV's wanton disregard for the rights of Defendants.

33. SVYATOSLAV's posts were highly reprehensible in that they caused Defendant's great harm.

34. SVYTOSLAV's posts concerning Defendants were made with reckless disregard for the well-being of Defendants.

## COUNT I

## DEFAMATION PER SE AGAINST DMITRIY CHEBANENKO

## (Words That Impute a Lack of Ability In Trade, Profession, or Business)

35. DMITRIY CHEBANENKO incorporates Paragraphs 1 through 34 as though fully set forth herein as Paragraph 31.

36. In his multiple posts and videos via Facebook and Youtube, SVYATOSLAV published to numerous people defamatory statements about DMITRIY's inability to run a legal business.

37. The defamatory statements and innuendos made in respect to DMITRIY were intended to hold him up to scorn, ridicule and public opprobrium.

38. SVYATOSLAV's posts are not subject to any privilege which would protect him from liability for his false statements.

39. SVYATOSLAV's materially false published statements were words that stated DMITRIY lacks ability in his profession as a manager at the trucking company.

40. DMITRIY does not need to plead special damages in order to recover given the nature of SVYATOSLAV's false statements and accusations made by SVYATOSLAV.

41. The slanderous and libelous conduct herein above described was the direct and proximate cause of injury and damages to DMITRIY.

6

42. The damages suffered by DMITRIY as a direct and proximate result of wrongful defamation herein above described are extraordinary and irreparable.

43. In addition to being held up to scorn and opprobrium, DMITRIY suffered, and will continue to suffer physical pain, mental anguish and loss of freedom.

WHEREFORE, Plaintiff, DMITRIY CHEBANENKO, requests actual and compensatory damages from Defendant, SVYATOSLAV LIKANOV, in the amount in excess of $100,000.00 (ONE HUNDRED THOUSAND DOLLARS). Plaintiff, DMITRIY CHEBANENKO, further seeks an award of punitive damages in an amount in excess of $1,000,000.00 (ONE MILLION DOLLARS), for Defendant's, SVYATOSLAV LIKANOV, willful and wanton defamation of plaintiff and to deter such conduct in the future.

## COUNT II

## DEFAMATION PER SE AGAINST DMITRIY CHEBANENKO

## (Words That Impute A Person Has Committed A Crime)

44. DMITRIY CHEBANENKO incorporates Paragraphs 1 through 34 as though fully set forth herein as Paragraph 40.

45. In his multiple posts and videos via Facebook and Youtube, SVYATOSLAV published to numerous people defamatory statements about DMITRIY's involvement in commission of crimes.

46. The defamatory statements and innuendos made in respect to DMITRIY were intended to hold him up to scorn, ridicule and public opprobrium.

47. SVYATOSLAV's posts are not subject to any privilege which would protect him from liability for his false statements.

7

48. SVYATOSLAV's materially false published statements were words that stated DMITRIY involvement in commission of crimes.

49. DMITRIY does not need to plead special damages in order to recover given the nature of SVYATOSLAV's false statements and accusations made by SVYATOSLAV.

50. The slanderous and libelous conduct herein above described was the direct and proximate cause of injury and damages to DMITRIY.

51. The damages suffered by DMITRIY as a direct and proximate result of wrongful defamation herein above described are extraordinary and irreparable.

52. In addition to being held up to scorn and opprobrium, DMITRIY suffered, and will continue to suffer physical pain, mental anguish and loss of freedom.

WHEREFORE, Plaintiff, DMITRIY CHEBANENKO, requests actual and compensatory damages from Defendant, SVYATOSLAV LIKANOV, in the amount in excess of $100,000.00 (ONE HUNDRED THOUSAND DOLLARS). Plaintiff, DMITRIY CHEBANENKO, further seeks an award of punitive damages in an amount in excess of $1,000,000.00 (ONE MILLION DOLLARS), for Defendant's, SVYATOSLAV LIKANOV, willful and wanton defamation of plaintiff and to deter such conduct in the future.

## COUNT III

### DEFAMATION PER SE AGAINST INNA CHEBANENKO

### (Words That Impute a Lack of Ability In Trade, Profession, or Business)

53. INNA CHEBANENKO incorporates Paragraphs 1 through 34 as though fully set forth herein as Paragraph 49.

54. In his multiple posts and videos via Facebook and Youtube, SVYATOSLAV published to numerous people defamatory statements about INNA's inability to run a legal business.

55. The defamatory statements and innuendos made in respect to INNA were intended to hold him up to scorn, ridicule and public opprobrium.

56. SVYATOSLAV's posts are not subject to any privilege which would protect him from liability for his false statements.

57. SVYATOSLAV's materially false published statements were words that stated INNA's inability to run a legal business.

58. INNA does not need to plead special damages in order to recover given the nature of SVYATOSLAV's false statements and accusations made by SVYATOSLAV.

59. The slanderous and libelous conduct herein above described was the direct and proximate cause of injury and damages to INNA.

60. The damages suffered by INNA as a direct and proximate result of wrongful defamation herein above described are extraordinary and irreparable.

61. In addition to being held up to scorn and opprobrium, INNA suffered, and will continue to suffer physical pain, mental anguish and loss of freedom.

WHEREFORE, Plaintiff, INNA CHEBANENKO, requests actual and compensatory damages from Defendant, SVYATOSLAV LIKANOV, in the amount in excess of $100,000.00 (ONE HUNDRED THOUSAND DOLLARS). Plaintiff, INNA CHEBANENKO, further seeks an award of punitive damages in an amount in excess of $1,000,000.00 (ONE MILLION DOLLARS), for Defendant's, SVYATOSLAV LIKANOV, willful and wanton defamation of plaintiff and to deter such conduct in the future.

## COUNT IV

## DEFAMATION PER SE AGAINST INNA CHEBANENKO

## (Words That Impute A Person Has Committed A Crime)

9

62. DMITRIY CHEBANENKO incorporates Paragraphs 1 through 30 as though fully set forth herein as Paragraph 58.

63. In his multiple posts and videos via Facebook and Youtube, SVYATOSLAV published to numerous people defamatory statements about INNA's involvement in commission of crimes.

64. The defamatory statements and innuendos made in respect to INNA were intended to hold her up to scorn, ridicule and public opprobrium.

65. SVYATOSLAV's posts are not subject to any privilege which would protect him from liability for his false statements.

66. SVYATOSLAV's materially false published statements were words that stated INNA involvement in commission of crimes.

67. IINNA does not need to plead special damages in order to recover given the nature of SVYATOSLAV's false statements and accusations made by SVYATOSLAV.

68. The slanderous and libelous conduct herein above described was the direct and proximate cause of injury and damages to INNA.

69. The damages suffered by INNA as a direct and proximate result of wrongful defamation herein above described are extraordinary and irreparable.

70. In addition to being held up to scorn and opprobrium, INNA suffered, and will continue to suffer physical pain, mental anguish and loss of freedom.

WHEREFORE, Plaintiff, INNA CHEBANENKO, requests actual and compensatory damages from Defendant, SVYATOSLAV LIKANOV, in the amount in excess of $100,000.00 (ONE HUNDRED THOUSAND DOLLARS). Plaintiff, INNA CHEBANENKO, further seeks an award of punitive damages in an amount in excess of $1,000,000.00 (ONE MILLION

DOLLARS), for Defendant's, SVYATOSLAV LIKANOV, willful and wanton defamation of plaintiff and to deter such conduct in the future.

## COUNT V

## TORTIOUS INTERFERENCE WITH CONTRACT AGAINST GIG LOGISTICS INC.

71.  GIG LOGISTICS INC. incorporates Paragraphs 1 through 34 as though fully set forth herein as Paragraph 67.

72. GIG has various valid, binding, enforceable contracts with its customers, subcontractors, drivers, brokers, vendors, and producers.

73. SVYATOSLAV has actual knowledge of these contracts between GIG and its customers, drivers, subcontractors, vendors, and procedures.

74. As set forth in the preceding paragraphs, SVYATOSLAV employed improper methods to interfere with GIG's contracts with its customers, subcontractors, drivers, brokers, vendors, and producers.

75. The improper methods used by SVYATOSLAV to interfere GIG's contracts include, but are not limited to:

> (i)     his public accusations of GIG's involvement in criminal activities while engaged in its trucking business;
> (ii)    his false statement onsocial media as to GIG's business practice(s);
> (iii)   his ongoing solicitation of GIG's customers, subcontractors, drivers, brokers, vendors, and producers to stop any business relationship with GIG; and
> (iv)    his encouragement of GIG's subcontractors, customers, drivers, brokers, vendors, and producers to make false statements, public or otherwise, concerningGIG with the sole purpose and intent of damaging GIG's business and business reputation.

76. SVYATOSLAV's use of improper means to interfere with these contracts directly and proximately caused several of GIG's customers, subcontractors, drivers, brokers, vendors, and producers to terminate or otherwise breach their existing contracts with GIG.

11

77. As a direct and proximate result of SVYATOSLAV's tortious interference with GIG's contracts with its customers, subcontractors, drivers, brokers, vendors, and producers, GIG has suffered lost future and past profits, lost corporate opportunities, and past, present, and future injury to its good will, and has been damaged in an amount to be determined at trial.

78. Money damages alone are insufficient to compensate GIG for the injury to its goodwill, as the extent of such injury is unknown and incapable of being precisely ascertained.

79. Therefore, GIG is entitled to an injunction prohibiting SVYATOSLAV from tortious interfering with GIG's contracts with its customers, underwriters, vendors, and producers for such time as necessary to allow GIG to be restored to the competitive position it occupied prior to SVYATOSLAV's tortious interference.

80. The reasonable remedy in this case would be a Court Order:

(i) Enjoining SVYATOSLAV from his public accusations of GIG's involvement in criminal activities while doing trucking business;

(ii) Enjoining SVYATOSLAV from his false statement at social media as to GIG's business practice;

(iii) Enjoining SVYATOSLAV from his ongoing solicitation of GIG's customers, subcontractors, drivers, brokers, vendors, and producers to stop any business relationship with GIG;

(iv) Enjoining SVYATOSLAV from his encouragement of GIG's subcontractors, customers, and drivers to make false statements as to GIG with the sole purpose to damage GIG's business;

81. Because SVYATOSLAV's tortious interference with GIG's contracts was willful, wanton, and malicious, GIG is entitled to the recovery of punitive damages in an amount to be proven at trial.

82. SVYATOSLAV tortious interference with GIG's contracts entitles GIG to recover all costs it incurs in this matter, including its attorney's fees, and that the Court award such other relief as it may deem just.

WHEREFORE, Plaintiff, GIG LOGISTICS INC, requests actual and compensatory damages from Defendant, SVYATOSLAV LIKANOV, in the amount in excess of $100,000.00 (ONE HUNDRED THOUSAND DOLLARS). Plaintiff, GIG LOGISTICS INC, further seeks an award of punitive damages in an amount in excess of $1,000,000.00 (ONE MILLION DOLLARS), for Defendant's, SVYATOSLAV LIKANOV, willful and wanton defamation of plaintiff and to deter such conduct in the future.

## COUNT VI

## TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY AGAINST GIG LOGISTICS INC.

83. GIG LOGISTICS INC. incorporates Paragraphs 1 through 34 as though fully set forth herein as Paragraph 67.

84. GIG has various valid, binding, enforceable contracts with its customers, subcontractors, drivers, brokers, vendors, and producers.

85. GIG has a valid business expectancy that its contracts will be continued renewed based on previous successful fulfillment of its contractual obligations to its customers, subcontractors, drivers, brokers, vendors, and producers.

86. SVYATOSLAV has actual knowledge of GIG's business expectancy as to ongoing and future contracts.

87. SVYATOSLV intentionally interfered with GIG's business expectancies with its customers, subcontractors, drivers, brokers, vendors, and producers.

88. The improper methods used by SVYATOSLAV to interfere with GIG's business expectancies include, but are not limited to:

      (i)     his public accusations of GIG's involvement in criminal activities while doing trucking business;

        (ii)     his false statement at social media as to GIG's business practice;

        (iii)    his ongoing solicitation of GIG's customers, subcontractors, drivers, brokers, vendors, and producers to stop any business relationship with GIG;

        (iv)    his encouragement of GIG's subcontractors, customers, and drivers to make false statements as to GIG with the sole purpose to damage GIG's business;

89. Absent SVYATOSLAV's tortious interference with the business relationship between GIG and its customers, subcontractors, drivers, brokers, vendors, and producers, it is reasonably certain that such business relationships would have continued.

90. As a direct and proximate result of SVYATOSLAV's tortious interference with the business relationship between GIG and its customers, subcontractors, drivers, brokers, vendors, and producers, GIG has suffered lost future and past profits, lost corporate opportunities, and past, present, and future injury to its good will, and has been damaged in an amount to be determined at trial.

91. Money damages alone are insufficient to compensate GIG for the injury to its goodwill, as the extent of such injury is unknown and incapable of being precisely ascertained.

92. Therefore, GIG is entitled to an injunction prohibiting SVYATOSLAV from tortious interfering with the business relationship between GIG and its customers, subcontractors, drivers, brokers, vendors, and producers for such time as necessary to allow GIG to be restored to the competitive position it occupied prior to SVYATOSLAV's tortious interference.

93. The reasonable remedy in this case would be a Court Order:

        (i)     Enjoining SVYATOSLAV from his public accusations of GIG's involvement in criminal activities while doing trucking business;

        (ii)    Enjoining SVYATOSLAV from his false statement at social media as to GIG's business practice;

      (iii)    Enjoining SVYATOSLAV from his ongoing solicitation of GIG's customers, subcontractors, drivers, brokers, vendors, and producers to stop any business relationship with GIG;

      (iv)    Enjoining SVYATOSLAV from his encouragement of GIG's subcontractors, customers, and drivers to make false statements as to GIG with the sole purpose to damage GIG's business;

94. Because SVYATOSLAV's tortious interference with GIG's business relationship was willful, wanton, and malicious, GIG is entitled to the recovery of punitive damages in an amount to be proven at trial.

95. SVYATOSLAV tortious interference with GIG's business relationship entitles GIG to recover all costs it incurs in this matter, including its attorney's fees, and that the Court award such other relief as it may deem just.

WHEREFORE, Plaintiff, GIG LOGISTICS INC, requests actual and compensatory damages from Defendant, SVYATOSLAV LIKANOV, in the amount in excess of $100,000.00 (ONE HUNDRED THOUSAND DOLLARS). Plaintiff, GIG LOGISTICS INC, further seeks an award of punitive damages in an amount in excess of $1,000,000.00 (ONE MILLION DOLLARS), for Defendant's, SVYATOSLAV LIKANOV, willful and wanton defamation of plaintiff and to deter such conduct in the future.

                      Respectfully Submitted,
                      **Law Office of Fedor Kozlov, P.C.**

By:      _____
                      Fedor Kozlov, ESQ
                      Attorneys for Plaintiffs

**Law Offices of Fedor Kozlov, P.C.**
1990 East Algonquin Road, Suite 230
Schaumburg, Illinois 60173
Tel: (847) 241-1299
Fax: (847) 241-1166
Email: fedor@nslslaw.com
ARDC: 6301810

15